## Curtis F. Whitton v. Robert U. Scott Et Al

[144 A2d 706]

May Term, 1958

Opinion Filed September 2, 1958

*William C. Sennett* and *Clarke A. Gravel* for the appellants.

*J. Malcolm Williams* and *Bloomer & Bloomer* for the appellees.

**Adams, J.** This case involves an appeal to the Rutland County Court from a decree of adoption by the Probate Court for the District of Fair Haven. Trial was by jury resulting in a verdict affirming the adoption decree and a judgment on the verdict. The case is here on exceptions of the appellant who is the natural father of Agnes Marie Whitton, a minor child, the adoption of whom by the appellees is the subject of the controversy. For convenience in this opinion the child will be designated Agnes, the appellant as the father, his wife as the mother and the appellees as the adoptive parents.

The pertinent portion of Chapter 420, V. S. 47, §9940 in regard to adoption as amended is as follows,—"*9940. Consent of minor and relatives.* Except as hereinafter otherwise [provided, if the person to be adopted is a minor, consent to the adoption shall be given, and the final adoptive decree executed

on the part of the minor, by both of his parents or by the surviving or sole parent.   Such consent and decree shall be sufficient when given and executed: * * * * * * ."

"V.   By the department of social welfare, if the minor has no parent, * * * * , or if the parents * * * * of such minor have abandoned his care and support or have left the state or, in the opinion of the probate court, are incompetent to have the care and custody of the minor;"

It is necessary to summarize some of the factual situation before considering the exceptions that are before us.   Agnes is the youngest of three children and was born in Poultney, Vt., January 21, 1950.   Her parents were Curtis and Lena Whitton who lived in Poultney.   On April 9, 1950, Lena Whitton was, by reason of a petition of the Selectmen of the town of Poultney and on an order of the Probate Court for the District of Fair Haven, removed to the Vermont State Hospital.   After a hearing on that petition on April 26, 1950, that court found and adjudged her to be insane and dangerous and ordered her committed to said hospital to be there supported at the expense of the state.   She was permitted to leave the hospital during the Christmas season in 1950 to visit her family in Poultney.   She failed to return to the hospital, but went to the home of her parents in Watervliet, N. Y.   Later she was committed to the Hudson River State Hospital at Poughkeepsie, N. Y.   In January 1953 she was on convalescent care from that hospital and in May 1954, she was living with her husband in Watervliet, N. Y.   On July 5, 1954, she was re-admitted to that hospital and was placed on convalescent care in the custody of her husband at an apartment in Troy, N. Y. on October 18, 1954.

On January 11, 1952, by mutual arrangement between her father and the adoptive parents, Agnes went to live in their home and she has remained there since then.   On February 29, 1952, these adoptive parents filed a petition in the Probate Court for the District of Fair Haven for an adoption decree of Agnes, therein stating that the father of Agnes resides in Poultney, Vt. but does not contribute to the support of the minor and that the last known address of the mother is 113 Broadway, Watervliet, N. Y., but that she is presently in the

State Hospital for the Insane at Poughkeepsie, N. Y. The father of Agnes joined in the petition.

The probate court referred the petition to the Department of Social Welfare for investigation and report in accordance with the statute. A report was filed on April 23, 1952. It contained a recommendation that a supervisory period of one year be required in accordance with the statutes. A second and final report was filed February 1, 1955 with an accompanying letter recommending "that hearing be held and that the natural parents be notified so that they may appear and state their case."

The hearing was held before the Judge of Probate for the District of Fair Haven on February 26, 1955. Both of the natural parents were notified of the hearing, separately, by registered mail at Troy, N. Y., on February 8. It was conceded by counsel for the father during the trial in county court that both parents were notified of the hearing in probate court and both were "present and represented in court." Both natural parents testified in opposition to the petition at the hearing before the probate court.

The probate court issued the adoption decree on August 8, 1955, approving the adoption of Agnes by the adoptive parents herein. The decree permitted the parties to execute an instrument of adoption. This was done on that date and it was signed by the adoptive parents and by "Phyllis N. Borah, Agent for Vt. Department of Social Welfare (For and on behalf of Agnes Marie Whitton, minor child)." The record does not disclose any findings of fact made by the probate court, except that there is inserted into the printed form of the original instrument of adoption the following, "WHEREAS, it has been made to appear to said court that Curtis Whitton and Lena Whitton, father and mother of Agnes Marie Whitton, minor child, have abandoned her care and are incompetent to have the care and custody of said child." It also appears above the signature of the Judge of Probate at the end of the instrument of adoption that it is found that the parties to the instrument are duly authorized to execute it in accordance with Chapter 420, V. S. 47, as amended and "It is ordered and adjudged that the

adoption described in the foregoing instrument be approved and ratified."

No reason appears in the record for the delay from the date of the hearing on February 26 to August 8, 1955 when the court authorized the adoption.

Following her appearance in the probate court and testifying in opposition to the adoption, the mother was returned to the mental hospital in New York in March 1955 and was there until November 15, 1955 when she was released on convalescent care. Although opposed to the adoption she did not join with the natural father in the appeal from the probate court to the county court. This is without doubt because when the appeal was taken she was confined in the mental hospital in New York. The record does not show any attempt to make her a party to the appeal or to the proceedings at any time after the appeal was filed in county court or that she has been represented by counsel therein.

■ The general appellate jurisdiction of the county court in probate matters provided by V. S. 47, §3087 applies to final adoption decrees of the probate court. *In re Whittemore*, 118 Vt 282, 286, 108 A2d 406. Chapter 149, V. S. 47 sets out the procedure to be followed in such appeals. §3100 provides in part,—"If a question of fact is to be decided, issue may be joined thereon under the direction of the court and a trial had by jury unless waived." The adoptive parents requested a jury trial.

The county court as it was constituted on June 21, 1956, held a pretrial conference and issues of fact were framed by the court and agreed to by the respective counsel representing the father and adoptive parents. These issues were four in number. The first two had to do with residence. We give those two no further attention as it was agreed at the time of the jury trial that the residence issue was out of the case. The 3rd and 4th issues set forth in the record of the pretrial conference were, 3rd "Was the child * * * * at some time prior to August 8, 1955, abandoned by her natural parents, * * * father and mother of the subject child respectively?" 4th "Are the natural parents, * * *, presently incompetent to have the care and custody of the minor child, * * *?"

At the jury trial, in December 1956, the court as then constituted, limited the evidence and factual situation pertaining to incompetency of the natural parents or either of them to August 8, 1955 or prior thereto. It instructed the jury that if the natural parents were incompetent on August 8 the probate court had the right to issue the adoption decree. The father as appellant claimed that the factual situation up to the time of trial in county court was relevant under the pretrial issue as framed and otherwise and evidence pertaining to conditions up to that time was proper. Also in the alternative a proper time under the pretrial issue as framed was when it was made on June 21, 1956, and not a date prior thereto. Exceptions were taken to the foregoing action and rulings of the court. We will first consider those exceptions.

■ The county courts sit in probate appeals as a higher probate court with power to try the identical matter involved in the subject of the appeal, and not to revise the errors of the probate court merely. *In re Delligan's Estate,* 110 Vt 294, 305-306, 6 A2d 1, and cases cited including *Everett* v. *Wing,* 103 Vt 488, 492, 156 A 393, and additional cases there cited. On appeal from the probate court, the county court sits as a higher court of probate with coextensive jurisdiction. *In re Cartmell Estate,* 120 Vt 234, 240, 138 A2d 592, and cases cited.

■ An appeal from a lower to a higher court carries up the whole case for a retrial upon all matters and features entering into and affecting the final decision and order to be made therein. *Hilliard* v. *McDaniel's Admr.,* 48 Vt 122, 126; *Brown* v. *Brown,* 66 Vt 76, 79, 28 A 666; *Maughan* v. *Estate of Burns,* 64 Vt 316, 320-321, 23 A 583.

■ On an appeal from probate court, the county court is invested with the same authority and powers in all matters involved as the probate court originally had and proceeds in the same manner as if the case had originated in the county court, not being confined to examination of questions actually considered in the probate court. *Valiquette* v. *Smith,* 108 Vt 121, 126, 183 A 483, and cases cited.

■ When a case is brought into the county court by

appeal from the probate court it stands upon the same ground, and is to be proceeded with in the same manner, as though the county court had original jurisdiction of the subject, and the proceeding had been first instituted there. *Williams* v. *Robinson*, 42 Vt 658, 662. In other words, the trial or hearing proceeds *de novo*. See Words and Phrases, Vol. 12, p. 107; *Burstein* v. *Milliken Trust Co.*, 350 Ill App 462, 113 NE2d 339, 341.

In the instant case, the petition to the probate court for the adoption of Agnes was dated February 27, 1952. It was filed February 29. The hearing in the probate court was on February 26, 1955, no further evidence was introduced and the decree of the court was dated August 8, 1955. Certainly that court could not have considered, in making its decree, any factual matter subsequent to the date of its hearing and between that date and August 8. At the appellate trial in county court it would have been as logical to have used February 26 as the date by which to limit the evidence as August 8.

■ Applying the foregoing rules applicable to trials in county court on probate appeals, to the instant case, the trial being *de novo*, the trial court was right at the pretrial conference when it framed the issue on incompetency as "presently incompetent" which we construe to mean as factually existing at the time of trial. It was error for the trial court to limit the evidence to conditions as of August 8 on that question and to so instruct the jury. This exception is sustained.

Our disposition of this question requires a reversal and a remand of the case. However, as some other questions may recur upon another trial, it seems advisable to mention them although it is questionable if they are covered by proper exceptions in all instances.

■ The case was submitted to the jury upon general verdicts either affirming or overruling the decree of adoption of the probate court. It is apparent from what we have said that this was improper. Special questions should have been submitted on issues as framed by the court and set forth at the pretrial conference. The trial was *de novo* and not limited to

determining if the probate court was in error in issuing the adoption decree as of August 8, 1955.

■■ The court charged the jury that intent of abandonment is not a factor. This was error. The overwhelming weight of authority is that abandonment or desertion within the purview of the adoption law must be absolute, complete and intentional. The most frequently approved definition is that abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. An abandonment or desertion within the purview of the adoption laws must be an intentional abandonment. See Anno. 35 ALR2d 662-670.

■ Whether an abandonment of a child, rendering unnecessary the parent's consent to an adoption, exists is a question of fact, depending largely upon the parents' intention, to be determined on competent evidence after notice to the parents. 2 CJS Adoption of Children, §21 p. 389.

It would seem advisable that before any further proceedings are had in county court that the proper procedure be instituted to make the mother a party and a guardian *ad litem* appointed, if her mental condition requires it. Certainly she should be notified of the proceedings and of any trial or hearing before that is done.

*Judgment reversed and cause remanded.*