This is an appeal from a decree quieting in the heirs of Sam Mullinax title to all the minerals underlying certain land located in Fayette County, Alabama. We reverse.
In 1934, Sam Mullinax purchased from M.B. Earnest land located in Fayette County. The deed from Earnest to Mullinax contained a reservation excepting the minerals and mining rights. Even though he only owned the surface, Mullinax assessed the entire property until 1957[1] when he *Page 884 
conveyed the property to a third party, reserving the minerals and mining rights to himself. During the period between 1934 and 1957, Mullinax conducted various coal mining operations on this property. These operations — conducted with wheelbarrows and wagons — including removing coal from an underground mine and exposed outcroppings as well as "pop shotting" to remove the overburden from coal seams lying near the surface. The coal removed was used for domestic purposes in Mullinax's blacksmith shop and home, although at one time Mullinax sold a portion of the mined coal to the Fayette County Board of Education. In 1939, Mullinax leased oil and gas rights to Superior Oil Company. Apparently, that company drilled one and possibly more wells, but subsequently abandoned the well or wells when they proved to be dry.
Mullinax's heirs brought suit to quiet in themselves title to all the minerals underlying approximately eighty acres of the land he owned in 1957. The trial judge, sitting without a jury, granted this requested relief as to sixty acres after he determined that Mullinax adversely possessed the minerals under that acreage because "the mining operations * * * were conducted openly and continuously, as seasonally necessary and as the nature of the business and operations and the customs of the country permitted and required," and that "[e]ntry on the land during any of the period would have revealed to a reasonable observer facts which should reasonably have made such observer believe that mining operations were being conducted."
The appellants, heirs of W.M. Ennis and others who were Earnest's and Mullinax's predecessors in title, raise several issues on appeal. The pivotal issue is: When title to minerals has been severed from title to the overlying surface, can those minerals be adversely possessed, and, if title can be so acquired, how far does the adverse possession extend?
The rules applicable to adverse possession of minerals when the title to the mineral estate has been severed from the surface estate were summarized by this Court in Sanford v.Alabama Power Co., 256 Ala. 280, 288, 54 So.2d 562, 569 (1951):
 After severance of the minerals, in situ, from the surface the possession of the latter is not possession of the former. The effect of the severance is to create two closes, adjoining but separate. The mineral, after severance, is a corporeal hereditament, and mere nonuser will not affect the owner's title; and to lose his right by adverse possession, the owner must be disseised. Hooper et al. v. Bankhead Bankhead, 171 Ala. 626, 54 So. 549, and cases cited. To acquire by adverse possession the title to the mineral interests so severed, there must be an actual taking or use under claim of right of the minerals from the land for the period necessary to affect [sic] the bar. Under the authorities, it is essential, to effect adverse possession of the minerals, after severance in title from the surface, that the adverse claimant do some act or acts evincing a permanency of occupation and use, as distinguished from acts merely occasional, desultory or temporary acts suitable to the enjoyment and appropriation of the minerals so claimed, and hostile to the rights of the owner. Birmingham Fuel Co. v. Boshell, 190 Ala. 597, 67 So. 403, and cases cited; Hooper v. Bankhead Bankhead, supra.
In the present case, the trial judge, hearing the evidenceore tenus, determined that Mullinax satisfied these requisites and, therefore, had adversely possessed the minerals. This determination of fact is supported by the evidence, is neither palpably erroneous nor manifestly unjust, and is accordingly due to be affirmed. Smith v. McNaughton, 378 So.2d 703 (Ala. 1979); Gertz v. Allen, 376 So.2d 695 (Ala. 1979). *Page 885 
The trial judge's determination as to the extent of Mullinax's adverse possession and his decree quieting title to sixty acres is, however, erroneous and due to be reversed.
The rationale of Sanford v. Alabama Power Co., supra, is applicable to the issues before this Court. That case involved a suit to quiet title to the minerals underlying the surface of the NE 1/4 and NW 1/4 of the SE 1/4 of Section 34, Township 15 South, Range 17 West, in Walker County, Alabama. In 1874, all of this property was owned in fee by H.A. Key. In January of that year, Key conveyed by deed the surface rights to J.M. Garner. Ten years later Key conveyed the rights to the minerals underlying Garner's property to Musgrove Brothers. In 1941 Alabama Power acquired the mineral interests via a deed from Musgrove Brothers. Sanford acquired his interest by way of inheritance from Garner. Alabama Power sued to quiet title to the minerals underlying the described property. Before trial, the complaint was amended to omit the NW 1/4 of the NE 1/4 of Section 34, upon which Sanford had conducted a coal mining operation. Sanford advanced two arguments pertinent here: first, that he had acquired title to the minerals underlying the entire tract of land in question by virtue of the mining operations conducted on the NW 1/4 of the NE 1/4 of Section 34; and, second, because he had color of title to all of the minerals underlying the land in question, his actual possession of the minerals in the quarter section where he was conducting mining operations was sufficient to constitute possession of all the minerals. After deciding that the facts did not support a claim of adverse possession, the Court, noting that it was not deciding a question of adverse possession, rejected Sanford's second argument, stating:
 We quote from the case of French v. Lansing, [73 Misc. 80, 132 N.Y.S. 523], as follows:
 "These rules [that one who actually possesses a portion of land under color of title constructively possesses all of the land] apply to adverse possession of the surface, and form no guide, even by analogy, to such a case as the present. They all contemplate some sort of notice to the true owner and possession and dominion of one kind or another over the whole of the premises claimed adversely. Where there is such known farm or lot with defined boundaries, the partial improvement may fairly be said to give warning of a claim to the whole, and to constitute possession of the whole.
 "The same thing cannot be said to result from the opening of a quarry for gypsum or limestone or the driving of a gallery into a vein of coal. In either case, what claim is made or what possession is there of the minerals beyond the face of the quarry or the end of the vein? If a coal mine, is there possession and claim of the entire vein no matter how far the same may extend? In the case at bar, if there is adverse possession, it covers at least the 200 acres deeded to Otis; for it is to be observed that the act of Otis and his grantees in subsequently dividing the surface is not notice of any kind to Wickham and his heirs. One of the tests of adverse possession under a claim of title is whether or not it is such as enables the possessor to maintain trespass against a stranger. If A. opened a quarry on the south end of these 200 acres, could he maintain an action in trespass against B. who, subsequently, opened a quarry at the north end thereof? Or, suppose B. opened a coal mine. Without, however, deciding definitely just how, if at all, adverse possession of minerals separated from the surface can be obtained, it is probably enough to hold here that the mere opening of a quarry, with or without a written claim of title, did not constitute adverse possession as against Wickham and his heirs of the gypsum situated beyond the quarry." [Emphasis supplied by Sanford
court.]
 In Piney Oil Gas Co. v. Scott, [258 Ky. 51, 79 S.W.2d 394], it was said:
 "A would-be disseisor who enters under a bare color of title is no better off than one who enters without color and marks off a distinct line around what he intends *Page 886 
to occupy. Each, if he acquires any rights, must do so because of his occupation, claim, and use of the premises for the statutory period.
 "A disseisor upon the surface may actually build upon, occupy, and use but a portion of the territory embraced within his marked line or color, but he has an immediately potential use and occupancy of the remainder of his claim, and the law by construction extends his actual occupation over it, but, when he gets below the surface and attempts to take possession of minerals, he can have no immediately potential use or occupation of the whole of the minerals over which the law can by construction extend his actual possession; therefore he can have no possession of the unmined portion. Their possession was never in advance of their operations, unless they surrounded a block; then they had possession of that block, but no more. They got no more than they loosened or around which they had established a confine. By their operations they may have pushed the mineral owner back, but they have never pushed him off. To disseise the title holder, they must push him off and keep him off. * * They could have no actual possession until they had a potential possession, and they have never had any potential possession of the coal that has not been disturbed. * * *
* * * * * *
 We are of the opinion that the reasoning underlying the holdings in the cases from other jurisdictions, from which we have quoted above, impels us to the conclusion that the mining operations conducted by [Sanford] in the NW 1/4 of the NE 1/4 of Section 34 cannot be said to have put him in possession of the minerals in, under or upon the lands included in the bill of complaint as amended.
256 Ala. at 289-90, 54 So.2d at 570-71. In sum, Sanford was in possession of only that part of the coal seam which he had either loosened or actually mined.
Mullinax's heirs concede in brief that adverse possession of a portion of the minerals does not always extend to the entire area to which the adverse possessor holds the surface rights. They argue, however, that title to the entire mineral estate will accrue to the adverse possessor if his actions constitute notice that he intends to claim title to all the minerals. In an effort to show that Mullinax's actions evince an intent to adversely possess all the minerals underlying his surface estate, the heirs point to the following factors: (1) record title to the surface estate was held by Mullinax; (2) he assessed the property; (3) he leased the rights to drill for oil and gas; and (4) his mining operations were conducted over most of the quarter section he owned.
Even though these facts argued by Mullinax's heirs may be evidence of his intent to adversely possess all those minerals underlying his surface estate, they in no way alter the rationale of Sanford: one may adversely possess only those minerals over which one has actual possession, and such possession is acquired only over those minerals which have been either bounded by a confine, loosened or actually mined. Thus, applying this rationale, we hold that Mullinax and his heirs only acquired title to that coal which was loosened or actually mined. It follows, therefore, that the trial judge's order quieting title in the heirs of Sam Mullinax is erroneous and is due to be reversed.
REVERSED AND REMANDED.
FAULKNER, EMBRY, BEATTY and ADAMS, JJ., concur.
[1] A.A. Nichols, the Fayette County Tax Assessor, testified that no one other than Sam Mullinax assessed the property in question during the years between 1934 when Mullinax acquired the property and 1957 when he sold it. In assessing the property, Mullinax did not assess the surface rights separately from the minerals rights as he could have done under Code 1975, § 40-11-1, and its predecessor Tit. 51, § 21, Code 1940. Nichols testified that as far as his records indicated, Mullinax assessed the whole property in fee. However, in answer to a subsequent question, Nichols explained that it is a general practice in Fayette County that when a property owner assesses his property and no one else separately assesses the mineral rights, such assessment is construed to be an assessment of both the surface and mineral rights. There was no evidence during either direct or cross examination of the tax assessor as to whether Mullinax continued to assess the mineral rights after he sold the surface rights in 1957. *Page 887