### In re Petition of DOERING

[686 A.2d 101]

No. 94-362

August 26, 1996. Henry and Carolyn

Doering appeal from a judgment of the Windsor Superior Court, arguing that the court erred in concluding that William Tabor, Jane Tabor Taylor and Marie Tabor Wortman, heirs to the estate of Rolla Bugbee, own a fee simple interest in metals and minerals underlying property owned by the Doerings. We affirm.

The Doerings first became aware that subsurface mineral rights had been severed when they purchased their property in 1964. Their deed stated that the "premises are subject to the exception and reservation of mineral and metal rights and right of way as described in a deed from Rolla G. Bugbee to Nora S. Booth dated May 10, 1899." The relevant portion of the Bugbee deed reads as follows:

> The farm whereon my father the late George H. Bugbee lived for many years and at time of his decease containing one hundred and sixty (160) acres of land more or less lying on both sides of the highway leading from Bridgewater Centre to Barnard; being all and the same premises which Russell N. Wood and wife conveyed to said George H. Bugbee by deed dated November 11, 1857 and recorded in Book 16 Page 477 of Land Records of said Bridgewater to which I refer *excepting and reserving to myself and my heirs and assigns forever all minerals and metals and the perpetual right without payment of damages or otherwise to prospect for, mine and take soapstone, talc, quartz and all other minerals and metals and to haul, team, dig and do as and whatever is necessary* and convenient for that purpose at any and all times on and in all of said premises which are on the Westerly side of said highway except on the house-lot of about one acre as the same is now enclosed by fence whereon are the house and sheds; across said house-lot I reserve to myself, my heirs and assigns forever a right of way as and where it is now traveled but no other privileges or rights. No rights of any kind are reserved on land Easterly of said highway.

(Emphasis added.)

Rolla Bugbee died intestate. When his estate was probated, the probate court held that Bugbee's heirs owned in fee simple the mineral rights on the Doering property. The Doerings appealed from that decision to the Windsor Superior Court, claiming that they had acquired title to the minerals through adverse possession, or, in the alternative, that Bugbee's heirs had abandoned their interest in the minerals. After a de novo trial, the superior court affirmed the decision of the probate court.

I.

The Doerings first claim that the heirs do not hold a fee simple interest in the minerals themselves, but instead hold only the intangible right to prospect or mine for minerals. The Doerings further contend that this intangible right has been abandoned.

It is long settled in Vermont that minerals and mining rights can be severed from a property to "form a distinct possession and different inheritances from the surface." *Jones v. Vermont Asbestos Corp.*, 108 Vt. 79, 105, 182 A. 291, 303 (1936). The language of the Bugbee deed clearly evinces an intent to sever the minerals and mining rights from the property conveyed. As the above excerpt from the deed reveals, the grantor used language of reservation and inheritance to sever and retain the minerals, metals and mining rights for himself and his "heirs and assigns forever." See *Okemo*

*Mountain, Inc. v. Town of Ludlow*, 164 Vt. 447, 451, 671 A.2d 1263, 1267 (1995) (when construing deed, we look to language of instrument); see also *Sheldon Slate Products Co. v. Kurjiaka*, 124 Vt. 261, 267-68, 204 A.2d 99, 104 (1964) (clear from language of deed that grantor intended to retain title in fee to minerals and quarry rights). Looking to the language of the deed, there is no doubt that Bugbee retained a fee interest in the minerals, which has now passed to his heirs.

## II.

The Doerings next claim that the heirs have lost their fee interest in the minerals and mining rights through abandonment or adverse possession. We first note that generally an interest in real property cannot be abandoned. *Martinez v. Continental Enters.*, 730 P.2d 308, 315 n.9 (Colo. 1986). Rather, a fee owner can be divested of title only through adverse possession. *Id.* Moreover, where there is severance of a mineral estate from the surface estate, mere occupancy of the surface is insufficient to establish title to the minerals by adverse possession. *Schaneman v. Wright*, 470 N.W.2d 566, 577 (Neb. 1991); see also *Dearing v. Oklahoma ex rel. Comm'rs of Land Office*, 808 P.2d 661, 668 (Okla. 1991) (severed minerals can be held adversely only by removal from land). Here, the Doerings have made no attempt to mine or otherwise remove the minerals; thus, their adverse possession argument must fail.

Indeed,

> [o]ur well recognized rule is that a possession that will work an ouster of the owner must be open, notorious, hostile and continuous for the full statutory period of fifteen years. The tenant must unfurl his flag on the land, and keep it flying so that the owner may see, if he will, that an enemy has invaded his dominions and planted his standard of conquest.

*Deyrup v. Schmitt*, 132 Vt. 423, 424, 321 A.2d 42, 43 (1974) (citations omitted). The Doerings own title to the surface; thus, their use and occupancy of the property is neither hostile nor adverse to the heirs' interest, and gives no notice of an "invasion" of the subsurface dominion.

## III.

In addition to severing the mineral rights, the Bugbee deed reserved a right-of-way across the house lot. The Doerings claim that they have extinguished the right-of-way through adverse possession, or, in the alternative, that it has been abandoned. Essentially, the Doerings argue that because the right-of-way provides access to the mineral deposits, its extinction, in combination with their surface occupancy, is adequate to allow them to acquire title to the minerals through adverse possession.

As noted above, surface occupancy is insufficient to establish adverse possession of subsurface minerals. Control of the right-of-way is simply an incident of surface occupancy. Furthermore, there is no authority for the proposition that a landowner can acquire title to another's property by extinguishing a right of way that provides access to it. Thus, even if the Doerings could cut off access to the minerals, it does not follow that they would thereby obtain title and divest the heirs.

Moreover, the Doerings cannot deny the heirs access to the mineral deposits because a severed mineral estate carries with it an implied right of access. See *Akers v. Baldwin*, 736 S.W.2d 294, 304 (Ky. 1987) (owner of mineral rights may use surface to acquire minerals lying thereunder; *Heikkila v. Carver*, 416 N.W.2d 593, 596 (S.D. 1987) (mineral owner has right to enter and make rea-

sonable use of surface for exploration and development of mineral deposit). Nor does the fact that they have been paying taxes on both the surface and subsurface estates aid the Doerings position; although payment of taxes is evidence of a claim of right, it is not an act of possession. *Deyrup*, 132 Vt. at 427, 321 A.2d at 45. Furthermore, we agree with the trial court that the placement of a lien against the mineral deposits by a prior heir was an exercise of property rights, rather than evidence of abandonment.

*Affirmed.*