2011 VT 95

### In re The Estates of Herbert O. Allen, Edward E. Allen and Edna L. Allen

### Gary E. Rupe v. Rupe Slate Company, Inc. a/k/a Rupe Slate Co. Inc. and Richard R. Rupe

[30 A.3d 662]

No. 10-408

Present: **Dooley, Johnson, Skoglund and Burgess, JJ., and Crawford, Supr. J., Specially Assigned**

Opinion Filed August 19, 2011

*Tracee Oakman Rupe* of *Law Office of Tracee Oakman, P.C.,* Wells, for Plaintiff-Appellant Gary Rupe.

*Lisa Chalidze,* Benson, and *Theodore A. Parisi, Jr.,* Castleton, for Defendants-Appellees.

¶ 1. **Dooley, J.** This case originates from a quiet-title action by defendant Richard Rupe and his father, Michael C. Rupe, laying claim to certain mineral rights by way of adverse possession. Plaintiff[1] Gary Rupe, Richard's brother, subsequently asserted his own claim to the mineral rights in question, and the probate court granted him a one-third interest in the rights. Defendant and his father appealed the probate decision to the superior court, which, after first granting summary judgment in favor of plaintiff on

---

[1] We refer to Gary Rupe as plaintiff because, as the case comes to us, he is seeking monetary damages from his brother, Richard Rupe. Similarly, we refer to Richard Rupe as defendant. When the action began in probate court, Richard Rupe and his father were plaintiffs and Gary Rupe was a plaintiff intervenor.

certain issues, ultimately dismissed plaintiff's claim to the mineral rights and awarded all rights, title, and interest to defendant.[2] Plaintiff now appeals this superior court judgment, arguing: (1) the court exceeded its authority by considering more than the issues raised in the statement of questions submitted on appeal from the probate court; (2) the court misstated the elements of proof for adverse possession and misapplied the law; (3) the court erred in failing to find adverse possession through cotenancy; and (4) the court erred in its requirements relating to a claim of unjust enrichment. For the reasons discussed below, we affirm.

¶ 2. The material facts of this controversy are largely undisputed. We include them in footnotes and in our discussion of adverse possession, *infra*, ¶ 12. Here, we set out the proceedings to date because they have taken a number of confusing twists and turns. The value of the property at the heart of the controversy lies in the mineral rights, first the slate that was extracted from it and then the gravel that was sold from it. Everyone apparently believed that the deeded title included the mineral rights, and the parties were in litigation over that title.[3] That litigation ended when plaintiff gave up all interest in the title in return for a monetary settlement from defendant and the parties' father. Defendant then went forward to sell the property for use as a commercial quarry, and the purchaser discovered that an earlier owner of the property had in 1920 sold the land but reserved the mineral rights.[4] The purchaser was unwilling to go through with

---

[2] Father, Michael C. Rupe, died during the pendency of the superior court action.

[3] Michael C. Rupe, father of plaintiff, defendant, and a third son, Michael S. Rupe, acquired sole title to the Regis White Property, the property in issue in this proceeding, in a 1960 deed that was lost and never recorded. Cranston H. Howe, the administrator of the Regis White Estate, issued a Replacement Deed to the Regis White Property to father in 1973. In 1980, father conveyed the Regis White Property to Nancy Rupe, defendant's wife, who later reconveyed the property to father and defendant.

In 1995, father signed a "corrective deed," purporting to transfer his ownership interest in the Regis White Property to all of his three sons. In July 1997, however, father and defendant filed a claim in superior court against plaintiff, alleging that the 1995 corrective deed was fraudulently obtained. The parties dismissed the litigation with prejudice on stipulation in 2004, with plaintiff executing a quitclaim deed for the Regis White Property in return for a $25,000 settlement from defendant.

[4] The mineral rights in question are located on the southerly three-quarters of a parcel of property that was conveyed in 1920 from the Allen family to John E.

the purchase until defendant and his father cleared title to the mineral rights.

¶ 3. Defendant and his father then brought a proceeding in probate court pursuant to 14 V.S.A. § 1801, alleging that the 1920 owner of the mineral rights had been deceased for over seven years, no estate had been opened to convey the mineral rights, and defendant and father had acquired title to them by adverse possession.[5] Their claim of adverse possession, which was undisputed in the probate and superior courts, was based on the operation of a slate quarry on the property by defendant and father from at least 1964 until approximately 1972, followed from 1979 to 1999 by operation of a commercial gravel pit.[6] The probate court action enabled the sale of the property after the probate court issued a judgment that defendant and father owned the mineral rights by adverse possession. Thereafter, plaintiff, who had not been served at the commencement of the probate court action, or otherwise given notice of the action, learned of the judgment and moved for relief from it, claiming co-extensive rights with his father and brother. The probate court granted plaintiff's motion without an evidentiary hearing on his adverse possession claim, and it awarded plaintiff a one-third interest in the mineral rights.

---

Owens. The Owens family transferred the property to the Rutland Savings Bank in 1935, and the bank, in turn, transferred the property to Regis E. White in 1938. In their original transfer to Mr. Owens, the Allen family excepted and reserved the mineral rights, known as the "Allen Mineral Rights," from the seventy-acre property. Defendant tracked the mineral rights to the heirs of Mary Allen, who died in 1931. No estates were opened for these heirs.

[5] A § 1801 proceeding is brought in probate court when "the record title to real estate or an interest therein stands in the name of a person who has been deceased for more than seven years and the estate of such person has not been probated and the interest of the heirs in that real estate has not been conveyed or has been defectively conveyed." In such a case, the probate division of the superior court "where venue lies, upon verified petition and after notice and hearing as provided by the rules of probate procedure, shall determine whether the deceased person or the decedent's heirs are possessed of an existing enforceable title or interest in that real estate." 14 V.S.A. § 1801. In *In re Estate of Allen*, 129 Vt. 107, 111-12, 272 A.2d 130, 133 (1970), this Court held that if the circumstances present in the statute were satisfied, the probate court could determine that a party without record title holds title by adverse possession.

[6] The probate court found that defendant and father were in continuous possession from 1973 to 2006.

¶ 4. Defendant and father appealed to the superior court the decision to give plaintiff an interest in the mineral rights. Defendant's primary theory on appeal was that, by virtue of the earlier litigation between the brothers and father, plaintiff had lost any interest in the mineral rights. This theory was reflected in the four questions[7] that defendant and father sought to have determined pursuant to Vermont Rule of Civil Procedure 72(c):

1) Did the proceeding captioned "Michael C. Rupe, Richard Rupe vs. Gary Rupe, Rutland Superior Court Docket No. SO416-97 RcC["] resulting in a Judgment Order dated May 20, 2004 resolve the parties' interest in and to the real property which is the subject matter of this litigation, including any mineral rights described in the real property described in the petition by the appellants filed in the Fair Haven Probate Court pursuant to 14 V.S.A. [§] 1801, being the same land involved in the prior declaratory judgment action in the Superior Court?

2) Is the appellee barred either through the application of [principles] of collateral estoppel or res judicata from asserting any claim to a fractional interest of ownership of the said mineral rights subsequently acquired by the appellants through probate petition?

3) Did the quit claim deed dated June 4, 2004, signed by the appellee, with respect to his claimed interest in a quarry parcel of approximately 70 acres, and given for valuable consideration in settlement of the Superior Court title action release and extinguish any and all claims or interests to any mineral rights located within its boundaries?

4) If the appellee claims that there were no mineral rights appurtenant to the land at the time of his quit claim deed, does the appellee have standing to assert any claims to such mineral rights acquired by the appellants through probate petition after the appellee's quitclaim release of all rights, title and interest in the subject property?

---

[7] Defendant attempted to add a fifth question by amendment to the preexisting questions. The additional question is not relevant to this decision.

Plaintiff responded to the four questions by moving for summary judgment on all questions raised upon appeal, arguing that the outcome of the earlier litigation over the title to the property had no effect on the action with respect to the mineral rights. The superior court granted the motion for summary judgment on August 9, 2007.

¶ 5. Plaintiff followed up the summary judgment with a complaint for damages, seeking a one-third share in the proceeds from the sale of the property, based on a theory of quantum meruit. The docket entries indicate that this complaint was considered a counterclaim in the appeal litigation. A number of status conferences ensued to determine what to do next. During this period, father died and the litigation continued between the brothers.

¶ 6. In the status conferences, the parties presented very different views of the effect of the summary judgment. Plaintiff's view was that the summary judgment meant that he owned a one-third interest in the mineral rights and the only remaining action for the court was to determine his percentage of the sale proceeds. Defendant argued that he and father had sold only their interests in the mineral rights and plaintiff's remedy, if any, lies between him and the purchaser of the mineral rights. Important to this appeal, defendant also took the position that summary judgment resolved only the preclusive effect of the earlier litigation, and plaintiff had to prove in the superior court that he obtained a one-third interest in the mineral rights by adverse possession. These differences were not resolved until the second day of the three-day trial when the trial judge ruled that plaintiff had to prove his own adverse possession. At the end of the trial, the court ruled that plaintiff failed to prove his adverse possession and therefore had no interest in the mineral rights.

¶ 7. Plaintiff's main argument on appeal is that, under Rule 72, the superior court had no authority to address plaintiff's ability to prove an interest in the mineral rights by adverse possession because this was not an issue explicitly included in the statement of questions submitted by defendant when the case was first appealed from the probate court. Plaintiff argues that the dispute over his interest in the mineral rights was concluded when the court granted summary judgment for plaintiff on defendant's four questions.

¶ 8. In a case such as this, the proceeding in the superior court is a hybrid of an appeal from the probate court (now probate division) and a de novo proceeding that is conducted as if the probate court proceeding never occurred. See *Whitton v. Scott,* 120 Vt. 452, 458, 144 A.2d 706, 709-10 (1958). In these circumstances, the statement of questions required by Rule 72(c) has a limited function. Recently, we have held that while a list of certified questions is mandatory, it only "serves to focus, but cannot limit, the issues for the court." *In re Estate of Doran,* 2010 VT 13, ¶ 14, 187 Vt. 349, 993 A.2d 436. In *Doran,* the statement of questions was properly submitted, the central issue being whether the wishes of the Doran property heirs had any bearing on decisions involving the property's sale. *Id.* ¶ 8. We held that, having answered this certified question in the affirmative, the superior court acted within its authority when it considered the separate issue of whether the intent of the heirs and administrators was accomplished in the sale as this was a "logical corollary" to the central issue on appeal and therefore within the "broad authority given to superior courts to try probate cases anew." *Id.* ¶ 14.

¶ 9. Plaintiff claims that *Doran* is distinguishable from the case at hand because the superior court's decision in *Doran* was based on evidence presented for the first time during the superior court trial and much of the evidence related to actions occurring after the filing of the appeal. While those were the facts in *Doran,* our ruling — that the statement of questions does not exclude the superior court's de novo review of related issues — is not limited to situations in which new evidence arises after appeal. Restricting the superior court's ability to address issues clearly relevant to the case, but overlooked in the statement of questions, would inhibit the superior court's ability to fully and fairly decide matters within its jurisdiction.

¶ 10. The problem in this case was different from that in *Doran.* Here, plaintiff had never been required to prove the central element of his claim — that he had acquired an interest in the mineral rights by adverse possession. As the facts showed, his situation had been markedly different from that of his brother and father, and his approach to showing adverse possession had to be different. The statement of questions raised appeal issues, but, as noted above, the proceeding in the superior court was more than an appeal, and plaintiff had to prove his underlying case.

¶ 11. Plaintiff claims that he properly relied upon the summary judgment and was surprised at the start of trial in 2010 when the court required him to prove adverse possession. He claims that he did not have time to adequately gather evidence to support his adverse possession claim to the mineral rights. While we do not doubt the sincerity of plaintiff's argument, we conclude that the surprise was avoidable. The summary judgment decision was an interlocutory order. See *Myers v. LaCasse*, 2003 VT 86A, ¶ 10, 176 Vt. 29, 838 A.2d 50. It was apparent from the status conferences that the meaning of the summary judgment was disputed. If plaintiff believed that the summary judgment meant that he had prevailed fully on the merits, he should have sought entry of judgment under Vermont Rule of Civil Procedure 58. See *Powers v. Hayes*, 170 Vt. 639, 640, 751 A.2d 781, 782 (2000) (mem.) (stating that summary judgment is not entry of judgment as required for a final judgment). Such an action would have focused the dispute before trial and produced a ruling that would have specified his burden of proof at trial. We do not believe that plaintiff's surprise prevented the trial court from requiring him to prove his adverse possession claim.

¶ 12. Having established that the superior court was within its discretion to require plaintiff to prove adverse possession, we turn to the claim itself. The relevant facts are as follows. From 1964, when plaintiff was eight years old, to 1972, when he was sixteen years old, he also participated in the quarry operations with father.[8] Although the quarrying ceased in 1972, defendant and father continued to keep up the property by maintaining the roads, removing rubbish, and paying taxes. From 1979 to 1999, defendant and father operated a commercial gravel pit on the premises, but did not resume stone quarrying. Plaintiff did not participate in the gravel pit business, but he independently removed some gravel for personal use and, from approximately 1985 to 1992, removed some previously quarried slate for personal use as well. In 1997, defendant, plaintiff, and father applied to register the slate quarry on the property, although plaintiff did

---

[8] In fact, there is conflicting evidence as to whether plaintiff actually "worked" in the quarry, or was simply being watched while his brother and father worked, but this is immaterial to the outcome of this case.

not engage in any other acts towards reestablishment of the quarry.[9]

¶ 13. Adverse possession is a mixed question of law and fact. *N.A.S. Holdings, Inc. v. Pafundi*, 169 Vt. 437, 438, 736 A.2d 780, 783 (1999). As such, this Court reviews the trial court's findings of fact in the light most favorable to the prevailing party below, not setting aside such findings unless clearly erroneous. *Id.* However, we review the trial court's conclusions of law under a plenary, nondeferential standard. *Id.* at 438-39, 736 A.2d at 783.

■ ¶ 14. Plaintiff argues that the superior court misstated the elements of proof for adverse possession and misapplied the law. We hold that the superior court correctly applied the law and affirm its decision on plaintiff's adverse possession claim. It is well-settled that to prove adverse possession, one must demonstrate fifteen years of open, notorious, hostile, and continuous possession. *Barrell v. Renehan*, 114 Vt. 23, 29, 39 A.2d 330, 333 (1944); see 12 V.S.A. § 501 (an action for recovery of land must be made within fifteen years after the cause of action first accrues); see also *Lysak v. Grull*, 174 Vt. 523, 526, 812 A.2d 840, 844 (2002) (mem.) ("In order to earn title to property by adverse possession, each of the petitioners must establish open, notorious, hostile, and continuous possession of the property through the statutory period of fifteen years."). As this Court stated in *Barrell*, "[t]he tenant must unfurl his flag on the land, and keep it flying." *Barrell*, 114 Vt. at 29, 39 A.2d at 333. Moreover, where mineral rights are severed by deed from surface rights, the owners of the mineral rights can lose title by adverse possession of another, but merely occupying the surface, without mining the minerals, is insufficient to establish adverse possession. See *In re Doering*, 165 Vt. 603, 605, 686 A.2d 101, 103 (1996) (mem.) (citing Nebraska and Oklahoma cases for proposition that mere occupancy of surface is insufficient to establish title to minerals by adverse possession); *Thomason v. Mullinax*, 403 So. 2d 883, 884 (Ala. 1981) (citing earlier case for proposition that "[t]o acquire by adverse posses-

---

[9] Pursuant to Act 250, 10 V.S.A. § 6081(l)(1), the owners of preexisting slate quarries were required to register them to avoid Act 250 review. Since ownership was disputed, all claimants signed the registration. This occurred after the "corrective deed" purported to give plaintiff an interest in the property and just before defendant and father brought the action against plaintiff for an adjudication that plaintiff held no interest in the property. This was well before the parties realized that they had no deeded title to the mineral rights.

sion the title to the mineral interests . . . there must be an actual taking or use under claim of right . . . for the period necessary to affect [sic] the bar" and to adversely possess minerals that have been severed in title from surface, claimant must "do some act or acts evincing a permanency of occupation and use, as distinguished from acts merely occasional, desultory or temporary acts suitable to the enjoyment and appropriation of the minerals so claimed, and hostile to the rights of the owner" (quotation omitted)).

¶ 15. Plaintiff's main argument appears to be that the court erred in requiring the fifteen years to be consecutive. Thus, he argues that he showed adverse possession for the years 1964 to 1972 and again for the period from 1985 to 1992, and these periods should be added to reach the fifteen years. We have often stated that the claimant must possess the property continuously over the fifteen-year period. This is the same as saying the years must be consecutive. Plaintiff cannot add two different periods, separated by many years, to establish the fifteen years of adverse possession. After his contribution to the slate quarrying business from 1964 to 1972, plaintiff vacated the property and ceased living in the area for many years, with no objective acts indicating that he intended to continue his possession or return to enjoy the premises. In other words, his "flag on the land" was not kept "flying." *Barrell*, 114 Vt. at 29, 39 A.2d at 333. This was true both for the slate quarrying, a business that was discontinued, and for the gravel extraction, a business in which he was never engaged. Plaintiff argues that the superior court should have considered his intent to assert possession of the mineral rights. While possession does not require constant presence on the land, intention alone is not sufficient to acquire possession. *Id.*; see *Thomason*, 403 So. 2d at 884 (stating claimant must "do some act or acts evincing a permanency of occupation and use, as distinguished from acts merely occasional, desultory or temporary acts suitable to the enjoyment and appropriation of the minerals so claimed, and hostile to the rights of the owner" (quotation omitted)). When plaintiff did return to the area, he visited the property only a few isolated times to remove ready materials for his personal use and did not take any steps to utilize the quarry. The court reasonably found that this minimal occupation does not rise to the level of hostile, open, notorious, and continuous possession required for a valid independent claim to the mineral rights.

■ ■ ¶ 16. Again trying to find possession for a fifteen-year period, plaintiff invokes the doctrine of constructive possession. Constructive possession is a doctrine "under which a claimant achieves possession of an entire plot of land through actual occupation of a part." *N.A.S. Holdings*, 169 Vt. at 441, 736 A.2d at 784. Plaintiff suggests that the doctrine applies because he was constructively possessing slate while defendant was taking gravel. Again this argument is defeated by the court's findings that he did not show adverse possession, even in the slate, after 1972 and our holding that he could not put together two separate periods of alleged possession to reach fifteen years. We see no applicability of the doctrine of constructive possession.

¶ 17. Plaintiff also argues that the superior court erred in failing to recognize his adverse possession through cotenancy with defendant and father. His argument here is that he had a title interest in the surface land through the corrective deed that father gave to his three sons in 1995. See *supra*, ¶ 2 n.3. The "corrective deed" was the source of the 1997 litigation between father and defendant on one side and plaintiff on the other that was settled with plaintiff relinquishing any interest in title to the land. Plaintiff relies upon *Big Run Coal & Clay Co. v. Helton*, 323 S.W.2d 855, 856 (Ky. 1959), for the proposition that if one cotenant in possession of a jointly owned tract of land "occupies and claims as part of that tract an adjoining parcel, his adverse possession of the parcel must be deemed to be that of all of the co-tenants." In that case, the court reached this holding based on the presumption that "[t]he possession of one cotenant is . . . the possession of all and inures to the benefit of all." *Id.* Here, plaintiff argues that he was a cotenant under the 1995 deed and the same principle applies to mineral rights.

■ ¶ 18. We have never addressed the issue decided in *Big Run Coal & Clay*, although we have recognized the fiduciary duty between cotenants. See *Cooper v. Cooper*, 173 Vt. 1, 7, 783 A.2d 430, 436 (2001). It is certainly a stretch of the holding of *Big Run Coal & Clay* to apply it where the cotenancy was disputed, the adversely possessing tenant was acting for himself, and the adverse possession was based upon extraction of minerals as the business activity of the cotenant in possession and not the other cotenants. We hold, however, that even if we accept the presumption of cotenant benefit, and it is not rebutted, the doctrine does

not apply here where plaintiff has failed to prove that he was ever a cotenant.

¶ 19. In its judgment, the trial court concluded, based on the evidence, that the "purported corrective deed is ineffective to convey any right, title, or interest of any type whatsoever to any person or entity." Thus, plaintiff failed to prove to the satisfaction of the trial court that he was ever a cotenant. Further, he relinquished any claim to that status in the settlement of the litigation between him and defendant and father. Under these circumstances, he cannot claim adverse possession through a cotenancy.

¶ 20. Because we hold that the superior court acted correctly in determining that plaintiff had no interest in the mineral rights controverted between the parties, we do not reach plaintiff's argument on his burden to show unjust enrichment.

*Affirmed.*