*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-092

SEPTEMBER TERM, 2014

| | | |
|---|---|---|
| Thomas W. Chase, Harold Chase and Ralph Chase | } | APPEALED FROM: |
| | } | |
| | } | |
| | } | Superior Court, Windham Unit, |
| v. | } | Civil Division |
| | } | |
| | } | |
| Taft Hill Tree Farm, Inc., Eric S. Scott and Patricia M. Scott | } | DOCKET NO. 458-10-11 Wmcv |
| | } | |

Trial Judge: John P. Wesley

In the above-entitled cause, the Clerk will enter:

Plaintiffs appeal the superior court's decision granting summary judgment to defendants on their claims to a disputed area of land based on record title and adverse possession. Plaintiffs argue that summary judgment was inappropriate because there are disputed questions of material fact on both issues. We affirm.

I. Facts and Proceedings Below

The parties own abutting tracts of land. Their holdings approximate the land comprising two former farm properties: one formerly known as the Hazelton Farm, roughly corresponding to plaintiffs' property, and the other formerly known as the Taft Farm, roughly corresponding to defendants' property. The disputed area of land is approximately nine acres and lies between the parties' properties. It is located to the east of Back Windham Road in Townshend. Defendants own the land on the west side of the road and plaintiffs own land to the north and east of the disputed parcel. The parcel is bounded to the south by a stone wall, which also forms the southern border of plaintiffs' land. There is another stone wall that runs north-south parallel to Back Windham Road and divides the disputed property in two.

Plaintiffs filed an action to quiet title, claiming they had record title to the property traceable to a 1958 deed to their predecessors in title that they claimed described the disputed parcel. They also asserted ownership through adverse possession. Defendants counterclaimed, asserting record title to the disputed tract. Defendant moved for summary judgment, tracing title to the disputed parcel back to the nineteenth century. The trial court denied defendants' initial motion for summary judgment. Reviewing the undisputed evidence, the trial court concluded that it was clear, as of 1873, that the disputed property was part of the Taft Farm. However, because there was insufficient evidence linking the 1873 deed to the 1958 conveyances upon which plaintiffs relied, the trial court ordered defendants to produce additional briefing and records concerning the conveyances of the property between 1873 and 1958. Defendants complied, and after a hearing the court issued a written decision granting defendants' motion for summary judgment.

After reviewing the relevant deeds, the court recounted the undisputed facts concerning the property. The stone wall bisecting the parcel marks what was the eastern boundary of the Taft Farm (now defendants' property) prior to 1812. There was no evidence that the portion of the land east of the road and west of the bisecting wall was ever conveyed out of the Taft Farm chain of title. As to the portion of the property east of the bisecting wall, the undisputed evidence demonstrated that in May 1812, Peter Hazelton conveyed the parcel to Peter Rawson Taft. That conveyance established a new eastern line for Taft Farm approximately 600 feet east of the stone wall.

The court explained that there was no evidence that after 1812, the parcel east of the stone wall and west of the Hazelton Farm was ever conveyed out of the Taft Farm chain of title. The undisputed facts showed that in 1873, the owners of Taft Farm, two Howard brothers, conveyed two parcels to the owner of Hazelton Farm, Samuel E. Williams. This conveyance effectively restored to Hazelton Farm the land granted to Peter Taft in 1812 except for the disputed parcel, which remained part of the former Taft Farm. The property conveyed in 1873 abuts the disputed parcel to the north and the southern boundary of the conveyed property described in the deed also delineates the northern boundary of the disputed parcel. The southern boundary of the conveyed parcel was described in the 1873 deed as running "thence south 76 degrees east to a stake and stones on the east line of [the former Hazelton Farm]."

From 1873 to present, the conveyances in the Taft Farm chain of title include the disputed parcel. In the first conveyance in this period, in 1882, the Howard brothers conveyed property to Samuel Barber on both sides of the Back Windham Road, and in the deed the northern boundary of the conveyance is described as "the southerly side of Samuel E. Williams land"—in other words, the line established by the 1873 conveyance. Based on this, the court found that it was undisputed that the deed to Barber included the parcel. Thereafter, the chain of title demonstrates that the parcel passed, and there were no conveyances out. Although the deeds do not contain a metes-and-bounds description, the court concluded there was no dispute that the parcel was included in the deeds and remained intact until acquired by defendants.

Plaintiffs' claim to title rested on a deed from Herbert Bernap to plaintiffs' parents dated April 26, 1958. This deed described the property conveyed by Bernap as "bounded on the west by the back highway leading from West Townshend Village to the Village of South Windham." Plaintiffs' expert attested that in his opinion some portion of the disputed parcel was included in this deed. Defendants sharply contested plaintiffs' reading of the 1958 deed, arguing that it conveyed only the parcel conveyed back to the Hazelton Farm in 1873—which is bounded on the west by the highway. The court concluded that there was no evidence to demonstrate Bernap owned the land in question at the time of the conveyance or that any portion of the disputed parcel was ever conveyed out of defendants' chain of title.

For a description of the property, the court relied on a survey completed by Dauchy Associates, Inc., dated December 1990. The survey was admitted into the summary judgment record by stipulation. The boundaries portrayed in the survey correspond to the analysis and diagrams of defendants' expert. In 2008, plaintiffs subdivided portions of their property north of the disputed parcel. That deed utilized the identical description of the southern boundary of the land as described in the Dauchy survey and very similar to that of the description of the property conveyed in 1873.

Based on these facts, the court concluded that defendants were entitled to judgment as a matter of law because defendants' chain of title demonstrated continuous ownership of the

2

disputed property. Although plaintiffs asserted ownership on the basis of the 1958 deed from Bernap to plaintiffs' parents, the court explained that plaintiffs did not support with evidence their claim that Bernap had title to property in 1958. Because Bernap could convey only that which he owned, the court concluded that the disputed parcel was not conveyed in this transaction. The court further concluded that plaintiffs had failed to challenge the description of the parcel as set out in the 1812 and 1873 deeds and had acquiesced in the Dauchy survey platting of the boundary because plaintiffs had failed to challenge the survey after they received it in 1991 and had used it as a description of the boundary between their property and the disputed parcel in their 2008 subdivision.

Plaintiffs' claim of adverse possession rested on their assertions that: plaintiffs paid taxes on the property; plaintiffs had a history of logging the land once in the 1940s and once in the 1970s; one plaintiff remembered his father posting the property "along the Back Windham Road down to its southerly boundary over the years"; plaintiffs have included the disputed property in their current-use registration; and one plaintiff testified by affidavit that he never observed any evidence of use by defendants of the disputed property during his life. The court determined that the tax maps did not confirm the payment of taxes. As to the other evidence, the court concluded that enrollment in the current-use program was not a hostile use, the logging activities were too insubstantial to be continuous, and the claims of posting the land were too vague to establish open, notorious, hostile and continuous use. Therefore, the court also granted defendants summary judgment on plaintiffs' adverse possession claim. Plaintiffs appeal.

## II. Record Title

On appeal, we apply the same standard as the trial court: summary judgment is appropriate when the record demonstrates there is no genuine issue of material fact and that any moving party is entitled to judgment as a matter of law. V.R.C.P. 56(a). In determining whether a genuine issue of material fact exists, we regard as true all allegations of the nonmoving party supported by admissible evidence, and we give the nonmoving party the benefit of all reasonable doubts and inferences. Lane v. Town of Grafton, 166 Vt. 148, 150 (1997). A party must support an assertion that a fact is undisputed with citation to documentary evidence, such as depositions or documents. V.R.C.P. 56(c)(1). When a motion for summary judgment is properly supported and the adverse party does not properly support a contested fact, the court may consider the fact undisputed for purposes of the motion. V.R.C.P. 56(e).

Plaintiffs do not point to any deeds reflecting a conveyance from the Taft Farm chain of title to their own chain of title of the disputed property, and do not assail the trial court's assessment of the chain of title generally. Instead, they focus on the deed descriptions of the disputed property as they relate to present-day evidence on the ground of the boundaries. They argue that the court erred in granting summary judgment because there is a dispute of fact concerning the boundaries of the disputed parcel to the north and east.

Plaintiffs concede that the 1812 deed to the owners of the Taft Farm included a specific metes and bounds description that conveyed record title to the Taft Farm that included the disputed parcel. And they do not contest that in 1873, the owners of Taft Farm conveyed back to the owners of the Hazelton Farm only a portion of that disputed parcel, retaining the balance for the Taft Farm. Plaintiffs focus their argument on the description in that 1873 deed as it relates to the monuments on the ground today. Plaintiffs contend that the description of the applicable subdivision line—"thence south 76º east to a stake and stones on the east line of the said late Charles E. Howard, said farm thence northerly on the east line of said late Charles E. Howard

3

farm" contains no monumentation of the beginning point of the bearing, nor an end point, nor a distance. To the extent that defendant's expert relied on a large yellow birch tree in a stone pile at the easterly end of the line on the easterly bound of the Taft Farm, as it existed in 1812, to connect the deed description to its survey on the ground, plaintiffs argue, that conclusion rests on a disputed fact. Plaintiff's expert submitted an affidavit reflecting that he could not find any evidence on the ground of a boundary or termination as referenced in the 1873 deed, and one of the plaintiffs swore by affidavit that he had not seen a yellow birch tree and stone pile or any other evidence of boundary in the area marked by the surveyor.

Plaintiffs have failed to show any dispute of fact as to record title. Although plaintiffs question defendant's survey delineating the boundary between the parcel retained by the Taft Farm and that conveyed back to the Hazelton Farm in 1873, they have acknowledged that they have no contrary evidence as to the metes and bounds of the disputed boundaries. Plaintiffs agreed that as of 1812, defendants' predecessor-in-title held title to the disputed parcel. Plaintiffs also agreed that the disputed property was defined by the 1812 (eastern boundary) and 1873 (northern boundary) conveyances. Based on these descriptions, the Dauchy survey platted the lines of the parcel. While plaintiffs contend that defendants' expert inaccurately interpreted to the deed to locate the actual boundary line on the ground, plaintiffs failed to offer any countervailing evidence as to where the line should be located.[1]

More significant to our conclusion, plaintiffs' challenges to defendants' survey do not connect to plaintiffs' own claims. Plaintiffs based their claim to title on their interpretation of the 1958 Bernap deed, but provided no evidence of how title to the disputed parcel—concededly part of the Taft Farm as of 1812—made its way to plaintiffs' predecessors in title. Vt. Shopping Ctr., Inc. v. Pettengill, 125 Vt. 145, 148-49 (1965) (grantor is limited to conveying property that he or she owns). Plaintiffs concede that they cannot show through the chain of title how Bernap acquired title to the disputed parcel purportedly conveyed in the 1958 deed. In fact, the deed upon which plaintiffs rely purports to convey to them title to the property all the way westward to the Back Windham Road—including the property to the west of the stone wall that plaintiffs acknowledge was part of the original Taft Farm and was never conveyed out, and to which plaintiffs do not actually claim record title despite the 1958 deed. Nor do plaintiffs attempt to explain the basis for the property description in the Bernap deed on which they rely.

Without saying so, plaintiffs essentially argue that, although the disputed parcel was undisputedly included in the Taft Farm at some point, because the subsequent deeds conveying property from the Taft Farm do not contain metes and bounds descriptions of the property conveyed, and are difficult to link to monuments on the ground, we should simply ignore the Taft Farm line of deeds and instead recognize a purported conveyance of the disputed parcel originating in a 1958 deed despite the lack of any evidence that the grantor in that deed had record title to convey. As a matter of law, plaintiffs' critiques of defendants' survey cannot overcome plaintiffs' failure to establish record title on the basis of the deeds in this case.

---

[1] Plaintiffs claim that the court incorrectly found that they had acquiesced in the Dauchy survey's depiction of the disputed parcel's boundaries by failing to challenge the survey and by utilizing it to describe the boundary in a 2008 subdivision of the property north of the disputed parcel. Plaintiffs argue that acquiescence requires a fifteen-year period and cannot be made through internal division. We do not rest our affirmance of the trial court's award of summary judgment on the theory that plaintiffs acquiesced to the boundary reflected in the Dauchy survey.

4

Plaintiffs fault the trial court for failing to analyze their claims using the statutory definition of "marketable title" as opposed to traditional concepts of "record title." 27 V.S.A. § 601(a) ("Any person who holds an unbroken chain of title of record to any interest in real estate for 40 years, shall at the end of that period be deemed to have a marketable record title to the interest . . . ."). "Marketable title" is defined as "title that will enable the purchaser to hold the land purchased free from the probable claim by another, a title which, if he wished to sell, would be reasonably free from doubt." Trinder v. Conn. Attorneys Title Ins. Co., 2011 VT 46, ¶ 16, 189 Vt. 492 (quotation and alternations omitted). Marketable title is relevant to a host of questions, such as coverage under certain title insurance benefits. Id. ¶ 17. But a claim of "marketable title" pursuant to the statute does not trump a claim of record title pursuant to a chain of deeds.

## III. Adverse Possession

Plaintiffs argue that summary judgment was incorrect because they presented sufficient evidence to establish the elements of adverse possession. "To achieve title through adverse possession, a claimant must show that use of the land was open, notorious, hostile and continuous throughout the statutory period of fifteen years." First Congregational Church of Enosburg v. Manley, 2008 VT 9, ¶ 13, 183 Vt. 574 (mem.) (quotation omitted). "Adverse possession is a mixed question of law and fact." Id. ¶ 12. Because this was a summary judgment decision, the question is whether the undisputed facts, viewed in the light most favorable to plaintiffs, are sufficient to meet the adverse-possession elements as a matter of law.

On appeal, plaintiffs assert that their logging activities (one time in the 1940s, although plaintiff cannot recall whether he has personal knowledge of the logging, and one time in the 1970s) were sufficient to create the type of open, notorious, continuous, and hostile use necessary to establish adverse possession. Plaintiffs rely on Amey v. Hall, 123 Vt. 62, 67 (1962), in which this Court explained that the "kind and frequency" of occupancy is dependent on the nature of the premises, and therefore regular harvesting of a woodland could establish continuous use. Plaintiffs also cite to Jarvis v. Gillespie, 155 Vt. 633 (1991), which explained that "using property only at certain times of the year for certain activities and not using it for the rest of the year can constitute sufficiently continuous use for adverse possession." Id. at 640.

We conclude that plaintiffs' evidence was insufficient to establish open and continuous use. Certainly, the type of use can vary, but it must demonstrate a claim to the land. As this Court has stated the claimant must "unfurl his flag on the land, and keep it flying." In re Estates of Allen, 2011 VT 95, ¶¶ 14, 190 Vt. 301 (quotation omitted). The facts here are unlike Jarvis, in which the claimant demonstrated several activities—cutting firewood and trees, parking vehicles, logging, storing wood—and was never absent for as long as a year. Here, one plaintiff averred that he believed the property was logged in the 1940s and he remembers logging it in the 1970s. These acts were too sporadic and irregular to "put a person of ordinary prudence on notice of the claim," 155 Vt. at 641, and to show the necessary continuous and open use. See In re Estates of Allen, 2011 VT 95, ¶¶ 14-15 (holding that intermittent use was insufficient to establish continuity requirement of adverse possession). Nor is Amey squarely on point. In that case, this Court affirmed the trial court's inference that a property owner's acquiescence to a blazed line between properties in its logging operations one year marked the beginning of its period of acquiescence to the marked boundary. 123 Vt. at 67. There is no evidence here of a marked boundary line on the ground, or that the past logging operations alleged by plaintiff followed that boundary.

5

Nor does the vague statement of one of plaintiff's witnesses that he recalls his father posting along the Back Windham Road to the southerly boundary through the years save plaintiffs' claim from summary judgment. Without some particulars as to where and when the posting occurred, and how frequently, this testimony is insufficient to survive summary judgment. Accordingly, we affirm that that plaintiffs failed to demonstrate adverse possession as a matter of law.

Finally, plaintiffs assert that the Burnap deed gave them constructive possession of the parcel under color of title. Adverse possession may be asserted through a claim of color of title; that is, a claimant can assert constructive possession of an entire tract of land by showing the appearance on its face of a claim to present title in the land, and actual and exclusive occupation of part of the deeded premises. Cmty. Feed Store, Inc. v. Ne. Culvert Corp., 151 Vt. 152, 156 (1989); see N.A.S. Holdings, Inc. v. Pafundi, 169 Vt. 437, 440 n.3 (1999) (explaining that claimant can assert constructive possession based on occupation and appearance of claim to present title). Here, plaintiffs assert that the Burnap deed gave them title to the disputed parcel and therefore they are operating under color of title. Even assuming that the Burnap deed on its face appears to convey title to the disputed parcel—an assertion sharply contested by defendants—plaintiffs' argument fails because they did not present evidence that they actually and exclusively occupied any part of the premises purportedly conveyed by the 1958 deed. The entirety of the evidence they have proffered in this point is one of the plaintiff's testimony that he participated in logging on the parcel one time in the 1970s and vague testimony that he remembers his father posting the property.[2] This is insufficient to establish the exclusive occupation required to support a claim for constructive possession under color of title.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

---

[2] The other instance of logging of this property described by this witness occurred in the 1940s, before the 1958 deed, so could not have been undertaken under color of title.