2008 VT 46

**DOWN UNDER MASONRY, INC. v. PEERLESS INSURANCE COMPANY**

[950 A.2d 1213]

No. 07-235

*Rainville*, J.

¶ 1. April 11, 2008. Plaintiff Down Under Masonry, Inc. appeals from summary judgment and denial of its motion for reconsideration. The trial court ruled that defendant Peerless Insurance Company was not required to indemnify Down Under under a commercial general liability (CGL) insurance policy because the act of installing the wrong type of cedar shingles on a garage roof by Down Under's subcontractor did not cause property damage and was not a covered occurrence under the terms of the policy. We affirm.

¶ 2. In 2000, Susan and Jonathan Crane hired Down Under to construct a garage with a studio apartment adjacent to their house in Hanover, New Hampshire. To complete the contracted work, Down Under subcontracted with Brian Moore to install shingles on the roof of the new garage. Moore, without any involvement by Down Under, purchased and installed eastern grade B white cedar shingles instead of the western blue label red cedar shingles that the contract required. The white cedar shingles were inferior in quality and different in color from the red cedar shingles on the Cranes' nearby house. Thereafter, the Cranes filed a lawsuit against Down Under in a New Hamp-

shire superior court seeking damages for breach of contract, negligence, and consumer fraud and attorney's fees under New Hampshire's Consumer Protection Act. The Cranes subsequently withdrew the negligence claim before the jury could decide the issue.

¶ 3. Prior to contracting with the Cranes, Down Under had purchased a CGL insurance policy from Peerless. Peerless, pursuant to the terms of its policy and upon return receipt of its reservation-of-rights letter, agreed to provide Down Under with a defense to the Cranes' lawsuit. On June 4, 2004, a jury found Down Under liable for breach of contract and violation of the Consumer Protection Act and awarded monetary damages and attorney's fees to the Cranes. Following the verdict, Peerless withdrew its defense and refused to indemnify Down Under against the award. According to Peerless, the damages awarded by the jury were not covered under the terms of the CGL policy. Down Under thereafter filed a declaratory judgment action in Caledonia Superior Court seeking a determination that the damages and fees arising out of the New Hampshire litigation were covered under its policy with Peerless. Both parties submitted cross-motions for summary judgment, and the trial court, after a hearing on the motions, granted summary judgment in favor of Peerless. The court denied Down Under's motion for reconsideration, ruling that, pursuant to our decision in *City of Burlington v. National Union Fire Insurance Co.*, 163 Vt. 124, 655 A.2d 719 (1994), breach of contract by an insured cannot be considered an occurrence under a commercial liability policy. This appeal followed.

¶ 4. Down Under now claims that the trial court committed reversible error in several respects. Down Under argues that the court erred by: (1) relying on a policy exclusion for contractually assumed liabilities in determining there was

no coverage for a subcontractor's error under the policy; (2) finding no property damage where a subcontractor's use of the wrong shingles caused injury to the appearance and value of the property; and (3) denying the existence of a coverable occurrence under the policy where a subcontractor violated the express terms of the contract without Down Under's knowledge.

¶ 5. We apply the same standard as the trial court in reviewing a grant of summary judgment. "Summary judgment is appropriate when, taking all of the allegations of the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Murdoch v. Town of Shelburne*, 2007 VT 93, ¶ 5, 182 Vt. 587, 939 A.2d 458 (mem.); see V.R.C.P. 56(c)(3). In an instance when both parties seek summary judgment, each party "must be given the benefit of all reasonable doubts and inferences when the opposing party's motion is being evaluated." *DeBartolo v. Underwriters at Lloyd's of London*, 2007 VT 31, ¶ 8, 181 Vt. 609, 925 A.2d 1018 (mem.). Our review in this case focuses on the interpretation of Down Under's CGL insurance policy. In construing the terms of the policy, we must "striv[e] to give effect to the intent of the parties as expressed by the plain language of the instrument." *Id.* ¶ 9. Because insurance policies are similar to other contracts, our review of the trial court's interpretation is nondeferential and plenary. See *id.* (noting that insurance policies are interpreted like other contracts); see also *Dep't of Corr. v. Matrix Health Sys., P.C.*, 2008 VT 32, ¶ 11, 183 Vt. 348, 950 A.2d 1201 ("We . . . review the trial court's interpretation of [a] . . . contract de novo.").

¶ 6. Down Under's first argument — that the trial court incorrectly relied on a contractually assumed liability exclusion in the policy in granting summary judgment for Peerless — is unconvincing. We have long reserved the right to affirm a trial court's correct decision " 'despite the fact that the court based its decision on a different or improper rationale.' " *Bloomer v. Gibson*, 2006 VT 104, ¶ 26 n.4, 180 Vt. 397, 912 A.2d 424 (quoting *Sorge v. State*, 171 Vt. 171, 174 n.*, 762 A.2d 816, 818 n.* (2000)). In the present case, the exclusion cited by the trial court requires an insured party to pay damages for which that party has assumed liability in a contract or agreement. The trial court did not rely solely on the existence of this exclusion in determining that Peerless was not liable to indemnify Down Under, but instead focused on what it determined to be a lack of a coverable occurrence under our precedent. Without affirming either rationale, we hold that the trial court was correct to find no genuine issue of material fact existed and that Peerless was entitled to summary judgment as a matter of law. Because the record supports alternate grounds for the trial court's conclusion, we hold that the court's limited reliance on the policy exclusion was harmless error, if error at all. See *Alpine Haven Prop. Owners Ass'n v. Deptula*, 2003 VT 51, ¶ 10, 175 Vt. 559, 830 A.2d 78 (mem.) (affirming grant of summary judgment on alternate grounds).

¶ 7. Down Under's second claim of error — that the trial court erroneously found that there was no property damage resulting from the subcontractor's use of the wrong shingles — is not supported by the record. As an initial matter, Down Under purchased additional liability coverage for subcontracted work under the policy. Even with the additional coverage, however, the terms of the policy incorporate the CGL Coverage Form 23-3, which defines the scope of coverage and requires Peerless to "pay those sums that [Down Under] becomes legally obligated to pay as damages because of . . . 'prop-

erty damage.' "[1] The form defines "property damage" as "[p]hysical injury to tangible property" or the "[l]oss of use of tangible property that is not physically injured."

¶ 8. Neither "physical injury" nor "loss of use" occurred in this case. The undisputed facts show that Down Under's subcontractor installed shingles that were inferior in quality and different in color from those specified in the original contract with the Cranes. Nothing in the record, however, suggests that any physical defect existed in the shingle material used or in the manner in which the shingles were installed, or that the Cranes were unable to use their new garage as a result of the inferior shingles. Our precedent directs that "[a]lthough we construe ambiguous terms in favor of the insured and to favor complete coverage, we must give effect to the clear terms of the insurance contract." *Fireman's Fund Ins. Co. v. CNA Ins. Co.*, 2004 VT 93, ¶ 47, 177 Vt. 215, 862 A.2d 251. To find that the aesthetic impact on property value caused by the installation of inferior shingles equates to "property damage" would extend coverage beyond the contemplation of the parties as it is expressed by the plain language of the CGL policy. See *State v. Glens Falls Ins. Co.*, 132 Vt. 97, 99, 315 A.2d 257, 258 (1974) ("Where the interpretation urged is not only strained, but would encompass a risk not contemplated by the kind of policy issued nor intended to be undertaken by the company, the insurer is entitled to that fair construction which reflects the understanding of the parties."). We decline to find coverage for aesthetic damage under a CGL policy that does not explicitly provide for it. See *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 822 (1984) (noting the inherent subjectivity of aesthetic judgments and that "beauty is in the eye of the beholder"). We hold, therefore, that the use of the wrong shingles by Down Under's subcontractor is not "property damage" under the plain meaning of the policy and affirm the trial court's grant of summary judgment in favor of Peerless.[2]

¶ 9. Finally, it is unnecessary to decide whether the actions by Down Under's subcontractor amount to an occurrence under our precedent. Even if there were an occurrence, Down Under's claim does not satisfy the "property damage" prerequisite for indemnification.

*Affirmed.*

---

[1] The policy also applies to "bodily injury," but no "bodily injury" has been alleged in this case.

[2] After trial on the breach-of-contract claim, the New Hampshire superior court declined to award damages to the Cranes for the alleged aesthetic harm caused by the subcontractor's work, and we agree with the court's assessment that variations in color or style do not amount to property damage.