NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 41

No. 2015-438

| | |
|---|---|
| Frank Lamson | Supreme Court |
| | |
| v. | On Appeal from<br>Superior Court, Windsor Unit,<br>Civil Division |
| | |
| Roger Lamson | October Term, 2016 |

Theresa S. DiMauro, J.

W.E. Whittington of Whittington Law Associates, PLLC, Hanover, New Hampshire, for
  Plaintiff-Appellee.

Shannon A. Bertrand and John C. Newman of Facey Goss & McPhee P.C., Rutland, for
  Defendant-Appellant.

PRESENT:  Dooley, Skoglund and Robinson, JJ., and Kupersmith and Morris, Supr. JJ. (Ret.), Specially Assigned

¶ 1.    **ROBINSON, J.**    This case involves a revocable trust established by Virginia Newman.  Her two sons, Roger and Frank Lamson, were both beneficiaries and trustees of the trust during the relevant time periods.  Roger filed an action in the probate division alleging breach of trust by Frank.  The court ruled in Roger's favor on his claim arising from Frank's personal use of Virginia's vehicles.  Frank appealed and the civil division granted Frank summary judgment on that claim.  Roger filed this appeal, arguing that the civil division erred in concluding Frank did not violate his fiduciary obligation and in failing to award damages for Frank's use of the vehicle.  We affirm.

¶ 2.     This case began in 2012, when Roger filed a petition for an accounting of the trust. At the time, Roger, Frank, and a bank were all co-trustees. Roger subsequently amended his complaint and alleged that Frank had committed breach of trust and acted in his own self-interest by distributing trust funds for his own benefit. In March 2013, the probate division removed Roger as trustee, Frank withdrew as trustee, and the probate division appointed both an independent institutional trustee and a guardian for Virginia.

¶ 3.     Roger's subsequent amended petition alleging various breaches of trust by Frank included a claim based on Frank's personal use of Virginia's cars, a 2000 Subaru and a 2009 Subaru. Roger alleged that trust funds were used to purchase the 2009 Subaru even though Virginia already had a car, and that additional trust funds were used to pay for the operation and maintenance of both vehicles. Roger claimed damages of $44,580 for "Frank's personal use of" these cars. The damage claim relied on an accountant's report that Roger attached to his complaint. This report included a section on "Personal Use of Virginia Newman Automobiles." The alleged breach of trust described in the report was that Frank used both of these cars for his and his family's personal use. In particular, the accountant concluded that from the time of the January 2009 purchase of the second Subaru until Frank resigned as trustee in July 2012, the car was driven 55,556 more miles than necessary for Virginia's care and pleasure. At the federal mileage rate, the value of the excess use for Frank's benefit was $30,000. The accountant opined that during the same period the 2000 Subaru was driven about 27,000 miles, "at largely Virginia Newman's expense." The accountant valued the benefit associated with this additional use of the car for the benefit of Frank and his family at $14,580.

¶ 4.     Virginia Newman died in February 2014.[1] The probate division held a hearing on Roger's petition over two days in May and July 2014.

---

[1] After the probate division removed Roger as trustee, and before Virginia's death, both the probate division and the civil division concluded that Roger did not have standing as either former co-trustee or as beneficiary of the revocable trust. Upon Virginia's death, the trust

¶ 5. The probate division made lengthy factual findings. On almost all of Roger's claims, the court found in Frank's favor. The court explained that Virginia lived close to Frank and was dependent on him and his wife for her daily needs. The court found that although Frank's funds and his mother's funds were commingled, the transactions were fair to Virginia and that any extra benefit to Frank was a gift from mother to son.

¶ 6. With respect to Roger's claim concerning Frank's use of the Subarus, the probate division ruled in Roger's favor. The probate division found that Virginia withdrew $25,000 from the trust principal to purchase the 2009 Subaru. The court stated that because the car "involved" trust principal, the court employed the "no further inquiry" rule, which assumes that transactions involving trust property entered into by a trustee for the trustee's own personal account are voidable without further proof. The court explained that Virginia's purchase of the car was voidable in light of the facts that trust property was used to purchase the vehicle, the vehicle accrued excessive mileage while Frank was caring for his mother, and the vehicle was ultimately transferred to Frank in the fall of 2011. The court concluded that Frank's good faith was immaterial. The court ordered Frank to pay damages of $44,580.[2]

¶ 7. Frank appealed the award of $44,580 to the civil division. Roger appealed other aspects of the probate division order to the civil division. Roger's appeal to the civil division was docketed separately and is not part of this proceeding.

¶ 8. As to Frank's appeal, both parties moved for summary judgment. In his motion and statement of undisputed facts, Frank argued that the 2009 Subaru was purchased from funds in a non-trust joint account in Virginia's and Frank's names, and was not a trust asset. Frank

---

became irrevocable and Roger had standing to pursue his claims as a beneficiary of the irrevocable trust. See In re Newman, 2015 VT 14, ¶ 16, 198 Vt. 489, 117 A.3d 424.

[2] The court drew this damage figure from the report of Roger's accountant. The $44,580 figure included $14,580 arising from Frank's alleged personal use of Virginia's 2000 Subaru. The probate division made no findings relating to Frank's use of the 2000 Subaru to support this component of its total damage award.

noted that the probate division made no finding that Frank breached the trust in connection with the purchase of the Subaru, and did not order Frank to repay any part of the $25,944 purchase price. Roger did not appeal this aspect of the probate division's order. The only claim at issue on appeal, then, was Roger's claim for Frank's excessive personal use of Virginia's cars, for which the probate division awarded damages based on the value of that use. Because there was no evidence that these cars were trust assets, Roger's breach of trust claim based on Frank's use of the cars failed. Frank further asserted that there was no evidence that trust funds were used to pay for expenses for the vehicles.

¶ 9.    In answer to Frank's assertion that the case did not cover the purchase of the car, Roger claimed that his separate appeal of the probate division order put all of his breach of trust claims before the court, and that his claims encompassed the purchase of the 2009 Subaru as well as Frank's use of Virginia's cars.[3] Roger also argued that the probate division implicitly found that the car was purchased with trust assets and therefore that this transaction was within the scope of Frank's appeal.

¶ 10.    The civil division considered the motions and relied on the following undisputed facts. As amended in 2003, the trust was self-settled and revocable during the lifetime of Virginia Newman. It provided that Florida law controlled. During the relevant time period, there were four co-trustees: Virginia, Frank, Roger, and a bank. The trust provided that all income would be paid to Virginia during her lifetime. The trust further explained that the trustee "shall pay to the Grantor such portions of the principal of the trust estate as the Grantor from time to time may direct in writing" and "may in its discretion pay to the Grantor, or use for the Grantor's benefit, such portions or all of the principal of the trust estate as the Trustee may

---

[3] Roger asserted that Frank had engaged in negligent administration, exercised undue influence over Virginia, converted her assets for his own use, and was unjustly enriched, but acknowledged that these claims were related to his separate appeal of the probate division order.

4

determine to be required for the Grantor's support, maintenance and welfare or for any other purpose which the Trustee may determine to be in the Grantor's best interest."

¶ 11. On January 26, 2009, $25,941 was transferred from a trust account to a personal account held jointly by Virginia and Frank. The bank files indicate that the funds were transferred "per client request on file Virginia B Newman." There is an internal bank email from a bank trust officer directing that the funds be transferred to an account at the Randolph National Bank. The email included the following statement, "Also, if you need to talk with Mrs. Newman or Frank Lamson, she is with him today and his cell number is (802) [***-****]." At the time, Virginia already owned a 2000 Subaru. On January 27, 2009, $25,941 was withdrawn from the joint account and paid to Subaru for a 2009 Subaru Outback. Virginia signed the bill of sale for the car, which identifies her as the purchaser. Virginia did not drive, but others used the vehicle to transport her. Frank used the Subaru occasionally for his personal use. In 2011, Virginia transferred title of the 2009 Subaru to Frank. Roger commissioned an expert report by a forensic accountant to review Frank's management of the trust account. As relevant to this appeal, it assigned a value of $44,580 to Frank's use of Virginia's two cars for his own purposes.

¶ 12. On summary judgment, the civil division applied the Florida Trust Code,[4] which provides that a "sale, encumbrance, or other transaction involving the investment or management of trust property entered into by the trustee for the trustee's own personal account or which is otherwise affected by a conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction unless" certain exceptions apply. F.S.A. § 736.0802(2) (emphasis added). The court concluded that Roger had failed to submit admissible evidence to show that Frank either purchased the Subaru "for his own personal account" or even entered the transaction at all. The court explained that there was no evidence to

---

[4] Both Florida and Vermont have adopted the Uniform Trust Code. The statutes are substantially the same, with only minor differences that have no bearing on the outcome of this appeal.

5

demonstrate that Frank caused funds to be transferred or that he, and not Virginia, was the motivator of the purchase. Therefore, the court concluded that Roger had failed to overcome the presumption that trustees act within the ambit of their authority. See In re Ziegler's Trusts, 157 So. 2d 549, 550 (Fla. Dist. Ct. App. 1963) ("The presumption is that the trustees will exercise [supervisory] power in good faith and within the bounds of sound discretion."). The court further concluded that because the Subaru was not an asset of the trust, there were no grounds to grant damages for Frank's alleged depreciation of the vehicle. Finally, the court concluded that Roger had failed to produce any evidence to show that Frank had used trust funds to pay for gas or maintenance expenses to support his personal use of the vehicle. Roger appeals.

¶ 13. On appeal, Roger focuses primarily on the transfer of funds from the trust account to Virginia and Frank's joint account for the purposes of funding the car purchase. In arguing that the court failed to apply the proper burden of proof in evaluating this transaction, Roger relies on a comment to the Uniform Trust Code that explains that when a trustee enters into a transaction involving trust property for the trustee's own personal account, the transaction is presumed to be a conflict and voidable without further proof. Unif. Trust Code § 802 cmt. (Unif. Law Comm'n 2000). Roger argues that the transfer of trust assets to Virginia and Frank's joint account and Virginia's subsequent purchase of the car that Frank used for his personal purposes was such a transaction. According to Roger, Frank benefitted himself by arranging for the transfer of trust assets to himself to fund the purchase of the 2009 Subaru and therefore the transaction is presumed to be voidable.

¶ 14. In reviewing a summary judgment decision, we apply the same standard as the trial court and consider whether the undisputed facts show that either party is entitled to judgment as a matter of law. V.R.C.P. 56(a); In re Estate of Kurrelmeyer, 2006 VT 19, ¶ 7, 179 Vt. 359, 895 A.2d 207. "[W]hen both parties seek summary judgment, each party must be given the benefit of all reasonable doubts and inferences when the opposing party's motion is being

evaluated." Down Under Masonry, Inc. v. Peerless Ins. Co., 2008 VT 46, ¶ 5, 183 Vt. 619, 950 A.2d 1213 (mem.) (quotation omitted).

¶ 15.   Applying this standard, we conclude that on the basis of the undisputed evidence, Frank is entitled to summary judgment.   We hold that Roger's claims for damages based on Frank's use of Virginia's cars fail as a matter of law, and that Roger cannot prevail on his breach of trust claim relating to the initial purchase of the car because the undisputed evidence is that Virginia ratified the disputed transaction.

### I.   Claim Based on the Value of Frank's Use of the Cars

¶ 16.   Our review is complicated by the evolution of Roger's argument through the course of this case, and the tension between the argument for damages that he advanced below and the legal theory he relies upon on appeal.   Before the probate division, and again before the civil division, Roger's theory was that the 2000 and 2009 Subarus were trust assets, which Frank used for his personal benefit, and that Frank is liable to the trust for the value of that personal use, calculated based on the excess miles traveled and the federal mileage reimbursement rate. Roger relied on an expert analysis of the value of the excess use of these two vehicles from 2009-2012 to support his claims.   Roger did not seek an order requiring Frank to repay the trust the $25,941 transferred from the trust to his joint account with Virginia—the remedy that would correspond to his theory on appeal that the transfer, and Virginia's subsequent purchase of a car with those funds were voidable.   Instead, he treated the 2009 Subaru as a trust asset and sought reimbursement to the trust of the value of Frank's use of that asset.

¶ 17.   Roger's claim for damages as framed below fails for several reasons.   First, it relied on the assumption that the cars were trust assets.   There is no evidence that the trust owned either car.   To the extent that Roger argued that Frank engaged in self-dealing in connection with the transfer of trust funds to his and Virginia's joint account for the purpose of buying a car allegedly for his primary use, the corresponding remedy would be an order voiding that transfer

and making the trust whole by essentially requiring Frank to repay those funds to the trust. See Unif. Trust Code § 802 cmt. (explaining that trustee's transaction affected by conflict of interest is voidable by beneficiary); see also <u>Becker v. Becker</u>, 138 Vt. 372, 380, 416 A.2d 156, 162 (1980) (explaining that fraudulent conveyance is voidable); Restatement (Second) of Trusts § 205 cmt. a (explaining that remedy for breach of trust is to put beneficiary in same position as before trustee committed breach of trust or to get remedy which will give beneficiary any profit trustee has made by committing breach).[5]

¶ 18.    Second, Roger proffered no evidence that the 2000 Subaru was a trust asset, or of trust expenditures in connection with that car, even though Frank's alleged personal use of that car accounted for $14,580 of the damages claimed by Roger. Roger's statement of undisputed facts makes no claim that the 2000 Subaru was titled to the trust or otherwise a trust asset. In his statement, Roger asserts only that during the 2009-2012 period in question, the 2000 Subaru "appeared to be operated at largely Virginia's expense." This evidence cannot support Roger's claim as a beneficiary against Frank as trustee for breach of trust.

¶ 19.    Finally, Roger produced no evidence that trust assets were used to pay for gas and maintenance expenses in connection with the 2009 Subaru; his only evidence that trust funds were potentially used to fund Frank's personal use of that car related to the initial purchase of that car. Roger's expert's calculation of the benefit to Frank in connection with his alleged personal use of the car relies on the federal mileage reimbursement rate—a figure that includes the costs of gas and maintenance, as well as depreciation to a vehicle associated with use. But Roger offered no evidence to support the suggestion that the trust funded the costs of gas and maintenance.

---

[5]  Roger's damages request did not comport with the alternative remedies set forth in the Restatement. Roger sought payment based on the federal mileage rate, which encompasses average costs for maintenance, repairs, depreciation, and fuel costs for a vehicle. Because the evidence did not show that the maintenance, repairs, or fuel were paid with trust funds, these amounts could not be recovered as damages. To the extent Roger sought depreciation this would have been less than repayment of the purchase price.

¶ 20. For these reasons, we conclude that Roger's claim for damages in favor of the trust based on the calculations in his expert's report is unsupported by the evidence as a matter of law.

## II. Claim Based on Frank's Participation in Transfer of Trust Monies to Buy 2009 Subaru

¶ 21. With respect to Roger's claim that the 2009 transfer of funds from the trust to Virginia and Frank's personal account for the purpose of buying Frank a car is voidable on account of Frank's self-dealing, we conclude that Frank is entitled to summary judgment as a matter of law.[6] We need not decide whether the evidence could support an inference that Frank participated in the transaction to his own benefit, such that the transaction should be analyzed through the prism of self-dealing. Because the undisputed facts support the conclusion that Virginia consented to the transaction, the transaction is not voidable.

¶ 22. The statute upon which Roger relies provides as follows:

> (2) . . . a sale, encumbrance, or other transaction involving the investment or management of trust property entered into by the trustee for the trustee's own personal account or which is otherwise affected by a conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction unless:
>
> (a) the transaction was authorized by the terms of the trust;

---

[6] Although Roger's focus has morphed through the course of this case, we reject Frank's argument that this claim based on the voidability of the purchase of the Subaru was not preserved below. Although Roger's pleadings and arguments before the probate division focused on the value of the use of the cars in question, his claim rested on the premise that the cars were trust property on account of the circumstances surrounding the purchase of the 2009 Subaru, including the facts that the funding came from the trust, Frank used the car for his own purposes, and Virginia ultimately transferred title to the car to Frank. The probate division decision in Roger's favor relied in part on these facts. Moreover, Roger squarely argued before the civil division that Frank arranged the purchase of the 2009 Subaru in violation of his duty of loyalty. Roger was not, as Frank argued, precluded from raising this argument in the civil division even though it was not specifically listed in the statement of questions on appeal. As we have explained, "the proceeding in the superior court is a hybrid of an appeal from the [probate division] and a de novo proceeding that is conducted as if the probate [division] proceeding never occurred," so that "the statement of questions required by [V.R.C.P.] 72(c) has a limited function." In re Estates of Allen, 2011 VT 95, ¶ 8, 190 Vt. 301, 30 A.3d 662. The statement of questions "serves to focus, but cannot limit, the issues for the court." Id. (quotation omitted).

9

(b) the transaction was approved by the court;

(c) the beneficiary did not commence a judicial proceeding within the time allowed by [the applicable statute];

(d) The beneficiary consented to the trustee's conduct, ratified the transaction, or released the trustee in compliance with [a relevant statute]; . . .

(f) The transaction was consented to in writing by a settlor of the trust while the trust was revocable . . .

F.S.A. § 736.0802; see 14A V.S.A. § 802(b) (containing almost identical language).

¶ 23.   As the party alleging that Frank breached his duties as trustee, Roger bears the burden of proffering evidence to prove every element of this claim.  See Travelers Ins. Co. v. Demarle, Inc., USA, 2005 VT 53, ¶ 3, 178 Vt. 570, 878 A.2d 267 (mem.) (explaining that moving party has burden of proof at summary judgment and opposing party receives "benefit of all reasonable doubts and inferences" (quotation omitted)).

¶ 24.   As a threshold matter, for the transaction to be voidable under § 736.0802, Roger must produce sufficient evidence to support an inference that Frank entered into the transaction for his own personal account.  Frank was not nominally a party to the transaction—the bank disbursed trust funds to an account held jointly by him and Virginia and the funds were, in turn, used to buy a car titled to Virginia.  For purposes of summary judgment, we assume without deciding that the following facts could possibly support an inference that Frank participated in the transaction for his personal benefit: Virginia did not herself drive; she was deaf and had poor eyesight; when she bought the 2009 Subaru, she already had a functioning car which she kept even after the 2009 purchase; Frank drove the 2009 Subaru; the mileage accrued on the 2009 Subaru during a three-year period was arguably greater than could be accounted for on the basis of Virginia's own needs; Virginia ultimately transferred title to the 2009 Subaru to Frank; and bank records suggest that Frank was a designated contact for the bank in connection with the transaction, and was with Virginia around the time of the transfer.

10

¶ 25.   This does not end the analysis, however, because the statute also states that a self-dealing transaction is voidable <u>unless</u> the beneficiary consented to the trustee's conduct or ratified the transaction.  F.S.A. § 736.0802(2)(d).  The undisputed evidence is that Virginia made the request for the transfer from the bank, was present with Frank on the day the money was transferred, signed the bill of sale for the car at the time she purchased it, allowed Frank to use it, and voluntarily transferred title to Frank a few years later.  Virginia actively participated in every step of this series of transactions, well before the probate division appointed a guardian for her.  In the face of this undisputed evidence of Virginia's consent to and subsequent ratification of the transfer of funds and purchase of the vehicle—even if Frank did participate in the transaction for his own benefit—Roger has not proffered evidence or even argued that Virginia did not, in fact, consent to the transfer of funds for her purchase of the car, Frank's use of the car thereafter, or the transfer of title to Frank.  He seems to suggest that her consent is immaterial if Frank benefitted from the transaction.  That argument is inconsistent with the terms of the statute defining the circumstances in which a self-dealing transaction is voidable.[7]  For that reason, even if Roger has effectively shifted his claim to a request to void the transfer of funds that financed Virginia's purchase of the car, that claim does not survive summary judgment.

¶ 26.   We note in closing that Roger also argues that the distribution at issue was made in a manner that violated the terms of the trust.  In particular, he contends that, although the trust document allowed Virginia, as settlor, to withdraw principal upon request, that request must be in writing.  Roger argues that Frank failed to produce evidence of a written request from

---

[7] Two other exceptions in § 736.0802(2) arguably apply.  First, a self-dealing transaction involving a trustee is not voidable if the beneficiary does not timely commence a judicial proceeding after notice of the matter.  F.S.A. §§ 736.0802(2)(c), 736.1008.  The undisputed facts are that Virginia, the sole beneficiary of the then-revocable trust at the time of these transactions, was fully aware of the transactions, and Frank's role therein, and did not file suit.  At the time in question, Roger was a contingent beneficiary only.  Second, where a settlor consents in writing to a transaction while the trust is revocable, the transaction is not voidable.  § 736.0802(2)(f).  Virginia, the settlor as well as beneficiary of this revocable trust, signed the bill of sale to purchase the car, as well as the document transferring title of the car to Frank, while the trust was still revocable.

Virginia. If, on the other hand, the distribution was made at the discretion of the trustees, as co-trustee he was entitled to notice of the proposed distribution and Frank should not have participated in any decisionmaking about the request.

¶ 27. Even if Roger had preserved these arguments, we would reject them for two reasons. First, as noted above, as the party challenging the transactions, Roger bears the burden of proof. The record contains some evidence that Virginia made a written request for the distribution—namely, a bank record noting a written request "on file." As settlor, she was entitled under the terms of the trust to distributions upon her written request. Roger had the opportunity to conduct discovery and get information from bank personnel. He has not satisfied his burden of showing noncompliance with the "in-writing" requirement. Second, to the extent that Roger contends that the bank violated the terms of the trust in distributing the funds to Virginia, that claim is directed at the bank, not Frank. The undisputed evidence is that the bank controlled the funds and distributed them to Virginia's joint account with Frank.

Affirmed.

FOR THE COURT:

_____

Associate Justice

¶ 28. **DOOLEY, J., dissenting.** I do not agree that summary judgment should be awarded to Frank Lamson if we look at the evidence in the light most favorable to Roger Lamson and give him the benefit of all reasonable inferences. In saying this I agree that the case turns on whether Virginia Newman consented to, or ratified, the transaction that provided a new car to Frank using assets of a trust for which Frank was a trustee. The weak link in the train of actions is the withdrawal of the money from the bank that held the trust assets and the placement of the money in a joint account held by Virginia and Frank. As Roger emphasizes, Virginia was deaf and almost blind and did not need a car because she already had one and retained it after the

12

new car was purchased. The precise method of communication is unknown but the message that Virginia could be contacted through Frank and his cell phone raises a reasonable inference that it was Frank that controlled the direction of the money to his account.

_____

Associate Justice